UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SCOTT, BLANE, AND DARREN
RECOVERY, LLC, et al.,

    Plaintiffs,

v.                                                          CASE NO.: 8:15-cv-153-T-23MAP

AUTO-OWNERS INSURANCE
COMPANY,

    Defendant.
_____/

**ORDER**

Scott, Blane, and Darren Recovery, LLC, (SBD) and Anova Food, Inc., sue (Doc. 1) Auto-Owners Insurance Company for breach of an insurance policy and for bad-faith denial of coverage. Auto-Owners counterclaims (Doc. 43) for a declaratory judgment that Auto-Owners owed no duty under the insurance policy to defend and to indemnify Anova. SBD and Auto-Owners submit (Docs. 52, 56) cross-motions for summary judgment on Auto-Owners's duty to defend. Also, Auto-Owners moves (Doc. 73) to dismiss under Rule 12(b)(1), Federal Rules of Civil Procedure.

**BACKGROUND**

Auto-Owners issued Anova a policy of commercial general-liability insurance. (Docs. 1-2, 1-3) Auto-Owners delivered the policy to Anova's Florida agent, who

delivered the policy to Anova's Florida headquarters.  (Doc. 52 at 4)  The policy covers "advertising injury" "caused by an offense committed in the course of advertising [one's] goods, products or services."  (Doc. 1-4 at 4–5; Doc. 1-7 at 30)  "Advertising injury" means an injury arising from an "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."  (Doc. 1-4 at 11; Doc. 1-7 at 30)  The policy excludes "advertising injury" that "aris[es] out of the failure of goods, products or services to conform with any statement or representation of quality of performance."  (Doc. 1-4 at 5)

The policy requires Anova to notify Auto-Owners in writing as soon as practicable of any "suit or claim" against Anova; directs Anova to send Auto-Owners a copy of any "demands, notices, summonses, or legal papers received in connection with the claim or suit" (Doc. 1-4 at 8–9; Doc. 1-7 at 27–28); and requires Auto-Owners both to defend Anova from a lawsuit alleging "advertising injury" and to pay damages that Anova is "legally obligated to pay" for causing an "advertising injury." (Doc. 1-4 at 4; Doc. 1-7 at 23)

In July 2007, King Tuna sued Anova in federal court in Oregon (Doc. 1-13, 4–16) and alleged that "[i]n public marketing materials, Anova claims that its tuna products are superior to its competitors' offerings" because Anova uses the patented "Clearsmoke" treatment for tuna.  (Doc. 1-13)  The Oregon complaint

alleges that the advertisements are "literally false" and that "in actual practice Anova sells raw tuna products which are treated and processed in a manner substantially different from the representations in Anova's advertising and marketing communications." (Doc. 1-13) The Oregon complaint alleges that the labeling and the advertising violate the Lanham Act and violate Oregon law.

In August 2007, Anova sent to Auto-Owners two letters about the Oregon suit, and each letter included a copy of the complaint. (Doc. 1-14 at 2) Auto-Owners responded and denied coverage. Auto-Owners stated that "[n]one of the claims made against Anova in the lawsuit seeks damages arising out of . . . advertising offenses as defined in the policy." (Doc. 22-1 at 13–14) In November 2007, King Tuna voluntarily dismissed the Oregon action.

Several weeks later King Tuna sued Anova for a similar claim in federal court in California. King Tuna alleged (1) that Anova falsely advertised that "its tuna products are superior to its competitors' offerings" due to Anova's use of a patented treatment and (2) that Anova falsely advertised that the patented treatment used "only one ingredient" to produce filtered wood smoke. (Doc. 1-8) Anova failed to notify Auto-Owners about the California action and failed to tender the California complaint to Auto-Owners. Anova eventually prevailed, but incurred an attorney's fee and costs of $3,656,484.93.

SBD and Anova sued (Doc. 1) in January 2015 and asserted that Auto-Owners wrongfully denied coverage and wrongfully refused to defend Anova in the Oregon action and the California action. A May 23, 2016 order (Doc. 35) denies Auto-Owner's motion (Doc. 17) to dismiss and determines that "Florida law governs the parties' rights and liabilities under the policy." (Doc. 35 at 8–9)

## ANALYSIS

**Standing**

Auto-Owners moves (Doc. 73) to dismiss under Rule 12(b)(1), and argues that SBD lacks standing. During discovery, Auto-Owners obtained a May 2010 closing document that transfers all of Anova's assets and liabilities to Anova Holding USA, LLC. (Doc. 73 at 2) Also, Auto-Owners found records showing that Scott, Blane and Darren Recovery LLC formed in April 2014, which leads Auto-Owners to conclude that SBD failed to exist in 2010 when Anova transferred all of Anova's assets to Anova Holding LLC. Auto-Owners argues that Anova incorrectly pleads that "Anova Food, Inc., has transferred to SBD the right to pursue the claims," (Doc. 1 at 1) and concludes that Anova Food, Inc., could not have transferred rights to the King Tuna Claim to SBD because Anova no longer owned the rights when SBD formed. (Doc. 56 at 9)

Anova moves (Doc. 75) to "strike [the exhibits] accompanying Auto-Owners's motion to dismiss." Auto-Owners attached several exhibits to the motion to dismiss

but cites only a single page from Darren Zobrist's 133-page deposition, which Auto-Owners claims amounts to conclusive evidence that Anova Food, Inc., failed to transfer a right to the King Tuna claim to SBD.

Zobrist's deposition confirms that Anova transferred an interest in the claim to SBD through a series of intermediary transfers. On May 31, 2010, Anova transferred all assets and claims to Anova Holding USA, LLC. On June 24, 2011, Anova Holding USA, LLC, transferred the claims to individual members, and on April 17, 2014, the individual members formed SBD and transferred their interests in the claims to SBD. (Doc. 74 at 4) The plaintiffs successfully establish standing.

**1. Duty to Defend**

The duty to defend, triggered by some covered event, arises from the "eight corners" of the policy and the complaint. *Mid-Continent Casualty Co. v. Royal Crane, LLC*, 169 So.3d 174 (Fla. 4th DCA 2015). An insurer must defend the entire action if the complaint alleges any claim that might come within the indemnity obligation. A fair and reasonable doubt about whether an insurer is under the duty to defend is resolved in favor of the insured. *Jones v. Florida Ins. Guar. Ass'n.*, 908 So. 2d 435, 443 (Fla. 2005). An insurer must defend a claim even if the insurer lacks certainty whether the policy provides coverage. *Mid–Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F. 3d 1143, 1149 (11th Cir. 2010). The duty to defend is triggered if the complaint alleges coverage under the policy. *State Farm Fire & Casualty Co. v.*

*Compupay, Inc.*, 654 So. 2d 944 (Fla. 3d DCA 1995) (Baskin, J.). To establish the duty to defend, Anova need not prove that Auto-Owners covered the claim or that coverage existed but must show that the injury appeared to fall within the policy's coverage for "advertising injury."

### A. "Advertising Injury"

Auto-Owners argues that Auto-Owners owed no duty to defend Anova (Doc. 56 at 12) (1) because the Oregon complaint does not allege a covered "advertising injury" (Doc. 56 at 13); (2) because neither an express statement nor an implied statement disparages King Tuna (Doc. 56 at 14); and (3) because no statement about a manufacturer's own product impliedly disparages a competing product. (Doc. 56 at 19) In response, Anova argues (1) that under the policy Auto-Owners had a duty to defend Anova because King Tuna "appears" to allege an "advertising injury" (Doc. 66 at 4), (2) that Auto-Owners conflates the duty to defend with the duty to indemnify (Doc. 66 at 4), and (3) that the King Tuna complaint alleges an advertising injury claim arguably covered by the policy. (Doc. 66 at 6)

### B. Express and Implied Disparagement

The "crux of disparagement is a comparison suggesting that another brand is inferior." *E.S.Y. Inc. v. Scottsdale Ins. Co.*, 139 F. Supp. 3d 1341, 1353 (S.D. Fla. 2015) (Altonaga, J.). Contrary to Anova's assertion (Doc. 66 at 7) that King Tuna's Oregon complaint (Doc. 1-13) included a copy of Anova's webpage, which made

- 6 -

"specific and explicit comparisons" between Anova's and King Tuna's manufacturing processes, the Oregon complaint fails to allege Anova's direct disparagement of King Tuna, King Tuna's products, or any third party or organization.

In the absence of an allegation of direct disparagement, a plaintiff can rely on an allegation of disparagement by necessary implication, which exists only if an advertisement claims superiority to a competitor's product and fails to name the competitor but permits identification of the competitor. In other words, depending on the wording of the policy, Florida law permits a claim for "advertising injury" even though the alleged false advertisement fails to explicitly identify the plaintiff that brought the false advertising action.

King Tuna alleges that Anova claims Anova's products are superior to the products of Anova's competitors. (See Doc. 1-13, ¶ 12, 13, 16, 26; Doc. 56 at 6) Anova relies on *Vector Prods., Inc., v. Hartford Fire Ins. Co.*, 397 F.3d 1316 (11th Cir. 2005) . However, *Vector* is of no assistance to Anova because in *Vector* the alleged disparaging advertisement targeted the "leading brand," not Vector's competitors at large. As the parties agree, *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 326 P.3d 253, 261 (Cal. 2014), provides useful guidance:

> In evaluating [disparagement claims], courts have required that the defendant's false or misleading statement have a degree of specificity that distinguishes direct criticism of a competitor's product or business

> from other statements extolling the virtues or superiority of the defendant's product or business.  A false or misleading statement (1) must specifically refer to the plaintiff's product or business, and (2) must clearly derogate that product or business. Each requirement must be satisfied by express mention or by clear implication. . . . We [hold] under the First Amendment that all injurious falsehoods must specifically refer to, or be 'of and concerning,' the plaintiff in some way.

An insurance contract is interpreted according to the policy's plain meaning. *Garcia v. Fed. Ins. Co.*, 969 So.2d 288, 291 (Fla. 2007)  The policy unambiguously states Auto-Owners' obligation to defend an alleged advertising injury that "disparages a person's or organization's goods, products or services."  The policy evinces no agreement by Auto-Owners to insure against a loss arising from Anova's advertising the superiority of Anova's product to the field of competing products. King Tuna alleged that Anova's statement about Anova's product indirectly harmed King Tuna.  Anova advertised generic assertions about the superiority of Anova's product.  Because the Oregon complaint does not allege a covered "advertising injury" and because Anova's advertisements failed to impliedly disparage King Tuna, Auto-Owners owed no duty to defend.

**2. Nonconformity Exclusion**

An insurer need not defend an action if the pleading shows that a policy exclusion applies. *Federal Ins. Co. v. Applestein*, 377 So. 2d 229, 231 (Fla. 3d DCA 1979) (Schwartz, J.)  The policy excludes from coverage an advertising injury

"[a]rising out of the failure of goods, products or services to conform with any statement or representation of quality or performance." (Doc. 1-7 at 24) Auto-Owners claims that the "nonconformity" exclusion negates any duty to defend. Anova argues that "specific factual findings [not yet determined at the time Anova tendered the Oregon claim to Auto-Owners] in the underlying case as to the quality of the goods are required in order to prove that the nonconformity exclusion bars recovery." (Doc. 66 at 9) Also, Anova argues that the exclusion is inapplicable because King Tuna alleges that Anova misrepresented not the "quality" of the final product, but the "process" by which Anova treated raw tuna. (Doc. 66 at 10)

Anova's argument lacks merit. The exclusion clause is unambiguous. King Tuna alleges that Anova's product failed to conform to Anova's advertised statement of quality.[1] Anova's proposed distinction between "process" and "quality" — arrant hair-splitting in this instance — is meritless. The "process" used to prepare Anova's product is intimately associated with the product's "quality." The alleged advertising injury followed as a consequence of the purported failure of Anova's product to

---

[1] Specifically, the Oregon complaint alleges that "[t]he Clearsmoke process purports to treat tuna with [hickory wood chip smoke]. . . . Anova represents that the Clearsmoke process has 'One ingredient only: Hickory Wood Chips.'" (Doc. 1-13 at 8) "Anova's marketing and advertisements are literally false as in actual practice Anova sells raw tuna products which are treated and processed in a manner substantially different from the representations in Anova's advertising and marketing communications." (Doc. 1-13 at 9)

conform with Anova's assertion as to the quality of Anova's product. The exclusion clause negates any duty to defend.

### 3. Insurer's Right to Receive Notice as a Condition Precedent to Maintaining an Action on a Claim

Auto-Owners argues (Doc. 56 at 21) that (by failing to tender the California complaint to Auto-Owners) Anova failed to comply with conditions precedent to Auto-Owners's duty to defend. Under the policy, Anova must notify Auto-Owners of any amended pleadings or other new information. Auto-Owners argues that because Anova breached Auto-Owners's right to receive notice of the California lawsuit, Anova cannot succeed on a claim that Auto-Owners breached the duty to defend.

Anova argues compliance with the policy due to Anova's providing Auto-Owners with notice of King Tuna's claims in the Oregon suit. (Doc. 66 at 11) Auto-Owners cites (as addressing this "exact issue") *G.M. Sign, Inc. v. St. Paul Fire & Marine Ins. Co.*, Case No: 1:14-cv-2977, 2016 WL 5340541 (N.D. Ga. June 9, 2016) (Ross, J.), which holds that an insurer owes no duty to defend an insured in a second action after the same insurer denied defense of the first and identical action. However, *G.M. Sign Inc. v. St. Paul Fire & Marine Insurance Co.*, No. 16-14905, 2016 WL 7473781 (11th Cir. Dec. 29, 2016) (per curiam), holds under Georgia law that after an insurer denies coverage for the first claim the insured is released from a

notice obligation as to that claim and that the insurer cannot assert lack of notice as a defense to coverage. But in *G.M. Sign* the plaintiff sued in Illinois state court and removed to federal court. The insurer refused coverage. The federal court dismissed the claims without prejudice. Immediately after dismissal in federal court, the same claims were filed again in Illinois state court. Here, King Tuna filed a different claim in a different state.

Anova is obligated to notify Auto-Owners of an "[o]ccurence, claim, or suit." (Doc. 1-4 at 7) The policy defines "occurrence" and "suit" but fails to define "claim." Anova argues that the definition of the word "claim" is ambiguous, that any ambiguity is construed in favor of Anova, and that King Tuna's two separate actions against Anova are, arguably, the same "claim." However, none of the authority that Anova cites involves a second action adding a new claim filed in a new jurisdiction.

The policy states clearly that Anova must tender Auto-Owners a copy of any "demands, notices, summonses, or legal papers received in connection with [a] claim or suit." Thus, the policy obligated Anova to notify Auto-Owners of the new action. Also, because the scope of the duty to defend is broader in California, Auto-Owners was denied the opportunity to assess whether coverage existed under California law.[2]

---

[2] Under Oregon law, whether an insurer is under a duty to defend depends on the complaint and the insurance policy. *Ledford v. Gutoski*, 319 Or. 397, 877 P.2d 80 (1994). In California, the duty

Not every failure of the insured to cooperate with the insurer excuses the insurer's defending an action. But a failure that constitutes a "material breach" and that "substantially prejudices the rights of the insurer" in defending the action will release the insurer from the duty to defend. *Ramos v. NW Mut. Ins. Co.*, 336 So. 2d 71, 75 (Fla. 1976). In some instances, particularly if the facts are not disputed, the presence of "substantial prejudice" is determinable as a matter of law. *Ramos*, 336 So.2d at 75. An insured's failure to comply with a policy requiring the insured to provide timely written notice to the insurer of a claim might negate an insurer's coverage obligation if the insurer is prejudiced by late notice. *Tiedtke v. Fid. & Cas. Co. of N.Y.*, 222 So. 2d 206, 209 (Fla. 1969); *State Farm Mut. Auto. Ins. Co. v. Curran*, 135 So. 3d 1071, 1079 (Fla. 2014). Here, Auto-Owners suffered substantial prejudice because Anova denied Auto-Owners the ability to attempt to negotiate a settlement of the California claim and denied Auto-Owners the ability to examine the new state law claim under California law.

## CONCLUSION

Auto-Owners's Rule 12(b)(1) motion (Doc. 73) to dismiss is **DENIED**. The motion (Doc. 75) to strike exhibits attached to the motion (Doc. 73) to dismiss is

---

to defend is ascertained by comparing the complaint's allegations with the policy. *Montrose Chemical Corp. v. Super. Ct. of Los Angeles County*, 6 Cal. 4th 287 (Cal. 1993). But "[f]acts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Montrose*, 6 Cal. 4th at 295.

**DENIED AS MOOT**. Auto-Owners's motion (Doc. 56) for partial summary judgment is **GRANTED**. Anova's motion (Doc. 52) for partial summary judgment establishing Auto-Owners's duty to defend is **DENIED**. Auto-Owners's counterclaim (Doc. 43) for declaratory relief is **GRANTED**. Auto-Owners owed no duty under the insurance policy to defend or to indemnify Anova under the circumstances presented in this action and for the reasons explained in this order. The clerk is directed to enter judgment against the plaintiffs and for the defendant on each of the two counts in the complaint (Doc. 1), to enter judgment against the plaintiffs and for the defendant on the defendant's claim for declaratory judgment in the counterclaim for declaratory relief (Doc. 43), to terminate any pending motion, and to close the case.

ORDERED in Tampa, Florida, on May 26, 2017.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE